```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE PLY GEM HOLDINGS, INC.                                :   14-CV-3577 (JPO)
SECURITIES LITIGATION                                       :
                                                            :   OPINION AND ORDER
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

On September 29, 2015, this Court granted Defendants' motion to dismiss Plaintiff's first Amended Complaint ("FAC"). *In re Ply Gem Holdings, Inc. Securities Litig.*, 135 F. Supp. 3d 145 (S.D.N.Y. 2015). In its Opinion and Order, the Court granted Plaintiff leave to amend. *Id.* at 155. Plaintiff filed its Second Amended Complaint ("SAC") on November 6, 2015. (Dkt. No. 51.) Defendants moved to dismiss the SAC on January 13, 2016. (Dkt. No. 55.) For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.[1]

**I.     Background**

Familiarity with the underlying facts and procedural history, as described in the Court's prior opinion, is presumed.

The claims raised in the SAC are substantially similar to those raised in the FAC. In the SAC, Plaintiff again alleges that Defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") in connection with Ply Gem's May 23, 2013, initial public offering of common stock (the "IPO"). (SAC ¶ 1.) As before, Plaintiff alleges that material information was omitted from, or misstated in, Ply Gem's Form S-1 registration statement and prospectus. (*Id.* ¶ 3.) Plaintiff again points to four main deficiencies in Defendants' public disclosures. Three of these omissions relate to Ply Gem's Windows and

---

[1] Plaintiff also filed a letter motion for oral argument. (Dkt. No. 65.) In light of the Court's opinion, the motion for oral argument is denied as moot.

Doors segment,[2] namely: (1) failure to disclose the cost of the Buy-Back Program in the Home Depot supply agreement; (2) failure to disclose that the agreement required Ply Gem to sell a large volume of lower-margin windows; and (3) failure to disclose operational inefficiencies and ramp-up costs with a new window-manufacturing facility. (*Id.* ¶¶ 9-11.) The fourth alleged omission relates to Ply Gem's Siding segment: failure to disclose declining sales of vinyl siding products. (*Id.* ¶ 12.)

Where the SAC differs from the FAC, however, is in the amount of factual detail it marshals in support of its allegations. In particular, the SAC includes an entirely new section titled "The Omitted Facts Were Material," which includes much new information, both quantitative and qualitative, about the magnitude of the alleged omissions. (*Id.* ¶¶ 70-86.) In this section, Plaintiff compares the value of the alleged omissions to a variety of Ply Gem financial metrics, provides detail about the segment-level impact of the alleged omissions, and excerpts analyst reports describing the import of the alleged omissions. (*Id.*)

Much of Defendants' current motion to dismiss is similar to their prior motion to dismiss. The motion argues that the SAC should be dismissed because: (1) Plaintiff failed to add sufficient facts to establish that the alleged omissions were material, and (2) Defendants adequately disclosed the alleged omissions to Ply Gem's investors. (Dkt. No. 56 at 2-3.) Defendants also argue that Plaintiff's Section 12(a)(2) claim fails due to the failure to plead that Defendants are liable as "statutory seller[s]" under that section of the statute. (*Id.* at 21.)

## II. Discussion

"To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Ply Gem*, 135 F. Supp. 3d at 149 (quoting *Litwin v.*

---

[2]   Ply Gem has two business segments: (1) Siding, Fencing and Stone; and (2) Windows and Doors. (SAC ¶ 38.)

*Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (citation omitted)).  As before, no heightened pleading standard applies and "this is an ordinary notice pleading case, subject only to the 'short and plain statement' requirements of Federal Rule of Civil Procedure 8(a)." *Id.* (quoting *Litwin*, 634 F.3d at 715).

Sections 11, 12(a)(2), and 15 of the Securities Act impose liability on a seller of securities, and those who control such sellers, where a registration statement or prospectus "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a); *see also id.* §§ 77*l*(a)(2), 77o.

In making its claims, Plaintiff again relies on Item 303 of SEC Regulation S-K as the basis for Defendants' disclosure obligation.  Item 303 requires a registrant to describe "any unusual or infrequent events or transactions of any significant economic changes that materially affected the amount of reported income from continuing operations" and "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(i)-(ii).  "The SEC's interpretive release regarding Item 303 further explains that a 'disclosure duty exists where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation.'" *Ply Gem*, 135 F. Supp. 3d at 149-50 (citing *Litwin*, 634 F.3d at 716).

A.  **Materiality**

Plaintiff's claims under Section 11, 12(a)(2), and 15 all rise or fall on the issue of materiality.[3] In its prior opinion, the Court dismissed the FAC for failure to "plead facts sufficient to permit the conclusion that the alleged omissions were 'reasonably likely to be material' at the time of the IPO." *Id.* (quoting *Litwin*, 634 F.3d at 716).

Materiality is satisfied where a plaintiff alleges "a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000); *see also Basic v. Levinson*, 485 U.S. 224, 231-32 (1988). "At this stage, a 'complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Ply Gem*, 135 F. Supp. 3d at 150 (quoting *Ganino*, 338 F.3d at 162).

In its prior opinion, the Court emphasized that the materiality inquiry is "inherently fact-specific," *id.* (citing *Basic*, 485 U.S. at 236), with both "quantitative and qualitative" aspects, *id.* (citing *Litwin*, 634 F.3d at 717). The Court also noted that the Second Circuit has endorsed the use of SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999) ("SAB No. 99"), which provides that "[t]he use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption" that a deviation less than that threshold is likely to be immaterial, but that smaller deviations may be material where other overriding factors are

---

[3]  Section 11 applies to registration statements; Section 12(a)(2) applies to prospectuses. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 (2d Cir. 2011). Here, the prospectus was incorporated into Ply Gem's registration statement. (SAC ¶ 3.) Section 15 additionally requires a plaintiff to allege that a defendant was in control of the Securities Act violation, *Hutchinson*, 647 F.3d at 490, which Defendants do not dispute (Dkt. No. 56 at 23).

present. *Ply Gem*, 135 F. Supp. 3d at 150 (quoting SAB No. 99 at *45151-52) (citing *Ganino*, 228 F.3d at 151).

In finding that the FAC failed to plead materiality, the Court generously provided Plaintiff with a roadmap to remedying that failure, pointing out at every turn additional facts that would have better supported Plaintiff's claims. In the SAC, Plaintiff has followed that roadmap, albeit with one major detour.

### 1. Windows and Doors Omissions

Plaintiff supplements its quantitative allegations of materiality for the alleged Windows and Doors omissions by adding discrete numerical comparators that helpfully contextualize the value of the omissions within Ply Gem's finances.

First, Plaintiff alleges that Defendants should have disclosed to Ply Gem's investors the buyback provision in the agreement between Ply Gem and Home Depot, which required Ply Gem to incur a substantial loss on inventory it was required to buy from Home Depot. (SAC ¶¶ 61-64, 76-77.) In the SAC, Plaintiff alleges that the buyback resulted in a $2.2 million decline in gross profit in the second quarter of 2013 and contextualizes that loss as a percentage of Ply Gem's overall gross profit (2.88%), operating earnings (76.87%), loss before income taxes (4.45%), net loss (4.52%), and comprehensive loss (4.32%). (*Id.* ¶ 77.) Within the Windows and Doors segment, this loss allegedly reduced gross profit by 10.44% and increased operating loss by 56.05%. (*Id.* ¶ 80.) Plaintiff also claims that the total cost of this loss in the first three quarters of 2013 was $4.5 million. (*Id.* ¶ 101.) As compared to the allegations in the FAC, the

SAC allegations provide quantitative detail that "meaningfully situate[s]" the cost of the buyback "in the context of the Company's finances."[4] *Ply Gem*, 135 F. Supp. 3d at 151.

Plaintiff also alleges that Defendants should have disclosed that the agreement with Home Depot required Ply Gem to sell a large volume of lower-margin windows and that Ply Gem was experiencing operational inefficiencies and ramp-up costs with a new manufacturing facility. (SAC ¶ 9-10.) Plaintiff alleges that the cost of the sale of low-margin windows and the ramp-up costs together totaled $8 million.[5] (*Id.* ¶ 75.) Plaintiff again contextualizes that loss as a percentage of Ply Gem's overall gross profit (9.73%), operating earnings (92.36%), loss before income taxes (18.35%), net loss (18.66%), and comprehensive loss (17.74%). (*Id.*) Plaintiff also claims that these costs together accounted for a 29.77% impact on gross profit in the Windows and Doors segment, and also would have turned an operating profit in that segment into a loss. (*Id.* ¶ 83.)

Many of Plaintiff's newly offered comparisons satisfy SAB No. 99's 5% rule of thumb. *See Ply Gem*, 135 F. Supp. 3d at 150. Some do not. In response to the Court's prior refusal to "adopt operating earnings as the pertinent guidepost," *id.* at 154, Plaintiff now offers a smorgasbord of options, comparing the omissions to multiple income-statement metrics in the hopes of providing an acceptable like-for-like comparison, *see Ganino*, 228 F.3d at 165. At this

---

[4] Defendants also contend that Plaintiff fails to plead that the buyback was an "unusual or infrequent" transaction, as required under Item 303. (Dkt. No. 56 at 10.) *See* 17 C.F.R. § 229.303(a)(3)(i). However, Plaintiff's description of the buyback shows that it was not a usual and frequent feature of Ply Gem's business (SAC ¶¶ 61-63; Dkt. No. 63 at 20), and the Court is not persuaded to the contrary by Defendants' reference to the disclosure of an unrelated inventory buyback in Ply Gem's 2012 10-K (Dkt. No. 56 at 10).

[5] Defendants dispute the accuracy of relying on this $8 million figure, arguing that the alleged misstatements account for only a small portion of the total. (Dkt. No. 56 at 12-13.) However, at this stage, the Court is obliged to draw all reasonable inferences in Plaintiff's favor. *See Litwin*, 634 F.3d at 715.

stage, the Court cannot decide which particular financial metric offers the best like-to-like comparison, as this implicates questions of fact about the nature of the omissions themselves and about Ply Gem's cost structure and accounting practices.  *See Ganino*, 228 F.3d at 165 ("Whether the plaintiffs will be able to prove that the [misstated revenue] had no offsetting expenses—and therefore can be properly recorded as income—is an issue of fact that cannot be decided at this stage of the litigation.").  But the Court does find that Plaintiff's bolstered quantitative allegations help support its claim that the omissions were material.

What Plaintiff does not do, and likely cannot do, is plead that the value of the alleged omissions amounts to more than five percent of Ply Gem's net sales.  Defendants repeatedly take Plaintiff to task for this failure, and suggest that it alone should justify dismissal.  (Dkt. No. 56 at 2, 8, 13.)  But while the Court's prior opinion suggested that such an allegation might be sufficient to show materiality, it nowhere held that it is necessary.  *See Ply Gem*, 135 F. Supp. 3d at 152.  Setting up a *per se* numerical bar to materiality—whether five percent of sales or otherwise—runs counter to the guidance of the Supreme Court and the Second Circuit, which have described materiality as an "inherently fact-specific finding," *Basic*, 485 U.S. at 236, defying "formulaic" assessment, *Ganino*, 228 F.3d at 162.  *Cf.* SAB No. 99, at *45151 ("[Q]uantifying, in percentage terms, the magnitude of a misstatement is only the beginning of an analysis of materiality; it cannot appropriately be used as a substitute for a full analysis of all relevant considerations.").  This Court again declines to draw a rigid line separating material from immaterial; rather, it need only consider Plaintiff's revised allegations, both quantitative and qualitative, and determine which side of that line they are on.

In addition to supplementing its quantitative case for the materiality of the Windows & Doors omissions, Plaintiff also significantly strengthens its qualitative case.  First, Plaintiff does

so by providing new detail about the importance of the Windows and Doors segment to Ply Gem's business.  In its prior opinion, the Court noted that "SAB No. 99 contains an illustrative list of circumstances which could 'render material a quantitatively small' omission," finding that "Plaintiff has not cited any qualitative factors that it believes support a finding of materiality." *Ply Gem*, 135 F. Supp. 3d at 152 (quoting SAB No. 99, at *45152).  SAB No. 99 includes on that list "[w]hether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability" and "[w]hether the misstatement changes a loss into income or vice versa."  SAB No. 99, at *45152.  The SAC has remedied this defect in the FAC by providing detail about the growth and profitability of the Windows and Doors segment relative to Ply Gem's other segment (SAC ¶ 81-82), and by alleging that the value of the omissions transformed a profit into a loss in that segment (*id.* ¶ 83-84).  (*See also* Dkt. No. 63 at 14-15.)  In further distinction from the FAC, Plaintiff now signposts its pleading with express reference to the requirements of SAB No. 99, making clear how its supplemented allegations satisfy that Bulletin and this Court's standard for materiality.  (*Id.* ¶ 79, 84.)

The SAC further strengthens the qualitative case for materiality by providing context around Ply Gem's stock-price decline after the disclosure of the alleged omissions as part of Ply Gem's second quarter 2013 earnings.  *See* SAB No. 99, at *45152 ("[V]olatility of the price of a registrant's securities in response to certain types of disclosures may provide guidance as to whether investors regard quantitatively small misstatements as material.").  Though market reaction alone is "too blunt an instrument to be depended on" to determine whether a single omission is material, *id.*, especially "where a disclosure contains many revelations," *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 424 (S.D.N.Y. 2013), Plaintiff

excerpts two analyst reports that point directly to the alleged omissions as justification for reduced stock-price expectations. (SAC ¶ 86 (noting "reduction in gross margin percentage" due to "labor inefficiency and ramp-up costs" and "Home Depot . . . roll[ing] out low margin product introductions").) The SAC's description of analyst disappointment resulting directly from the alleged omissions supports an inference that the adverse market reaction was predictable, and thus that the omissions were qualitatively material. *Cf. ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009) ("Plaintiffs have not alleged facts that would permit the inference that [management] expected that the alleged misclassification of the loans might result in a significant market reaction. For this reason, the market reaction . . . does not point towards qualitative materiality under SAB No. 99.").

These qualitative factors and quantitative factors together make clear that the SAC adequately alleges materiality regarding the three Windows and Doors omissions. The Court cannot conclude that the Windows and Doors omissions described in the SAC are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ply Gem*, 135 F. Supp. 3d at 150 (quoting *Ganino*, 338 F.3d at 162).

### 2. Siding Omission

As regards the Siding-related omission, however, Plaintiff has again failed to carry its burden of alleging materiality. Plaintiff claims that Defendants failed to disclose declining sales of vinyl siding products at the time of the IPO. (SAC ¶ 12, 65.) The Court previously faulted the FAC for "fail[ing] to situate the alleged omission . . . within the context of Ply Gem's finances so that a reasonable mind could conclude it was likely to be material at the time of the IPO." *Ply Gem*, 135 F. Supp. 3d at 154.

9

But Plaintiff does little to remedy the Court's earlier concern. It does not—unlike its treatment of the Windows and Doors omissions—quantify the magnitude of the sales decline or situate the value of the omission against Ply Gem's financial metrics. The SAC's added section, "The Omitted Facts Were Material," hardly discusses the siding omission at all. (SAC ¶¶ 70-86.) While it does offer a comment from an analyst that "sluggish demand . . . for siding" was in part responsible for diminished stock-price expectations, this qualitative remark lacks sufficient context to adequately allege materiality. (*Id.* ¶ 86.) And Plaintiff's off-handed comment in its brief suggesting that disclosure of the drop in siding demand would have changed a loss into income is similarly unsupported. (Dkt. No. 63 at 24.) Given Plaintiff's failure to bolster its allegations regarding the Siding omission, the Court again concludes that Plaintiff has failed to allege materiality as to this claim. *See Ply Gem*, 135 F. Supp. 3d at 154.

B.   **Adequate Disclosure**

Defendants argue that even if the omissions are found to be material, Plaintiff's claim should be dismissed "because Plaintiff does not, and cannot, allege that Defendants failed to satisfy their duty to make adequate disclosures to Ply Gem's investors." (Dkt. No. 56 at 3.) Specifically, Defendants contend that Defendants lacked sufficient knowledge of the buyback omission, as required under Item 303, and that Defendants adequately disclosed the omissions relating to the sale of low-margin windows and the ramp-up costs.[6]

First, Defendants contend that Plaintiff fails to plead that Defendants had actual knowledge of the existence of the Windows and Doors omissions' impact at the time of the omissions, as required under Item 303. (Dkt. No. 56 at 10-12, 15, 18-19.) *See* 17 C.F.R.

---

[6] Because it deems the pleading's Siding-related claim inadequate on the ground of materiality, the Court does not address Defendants' remaining Siding arguments. (Dkt. No. 56 at 19-21.)

§ 229.303(a)(3)(ii).  "A cognizable claim under Section 11 or 12 of the 1933 Act requires plaintiffs to, 'at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering.'"  *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008) (quoting *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 323 (D.N.J. 2000)).  Plaintiff alleges that Defendants were aware of the buyback and that buyback-related losses had already been incurred prior to the IPO.  (SAC ¶¶ 61, 63, 64.)  Similarly, Plaintiff alleges that Defendants were aware of the impact resulting from the sale of low-margin windows (*id.* ¶¶ 44, 69), and from the ramp-up costs at the Dallas plant (*id.* ¶¶ 47-50).  Unlike in *Blackmoss*—the case upon which Defendants primarily rely—in which a company was found to lack knowledge of a nascent, exogenous trend in the mortgage-backed securities market, here the nature and impact of the buyback were well within Defendants' knowledge.  (Dkt. No. 45 at 11.)  *See Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, No. 07 CIV. 10528, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010).

Defendants also contend that Ply Gem adequately disclosed the alleged omissions involving the sale of low-margin windows and the ramp-up costs.[7]  (Dkt. No. 56 at 14-15, 17-18.)  Regarding the low-margin windows, Defendants point to several sources, including the Registration Statement, which reported that Ply Gem's sales increase was "focused on [its] lower margin products," which resulted in "gross profit decrease," and that the "sales mix of . . . value priced window products that generally carry lower gross profit margins" increased.  (*Id.* at 14-15 (citations omitted).)  Regarding the ramp-up costs, Defendants note that the Registration Statement included discussion of "labor inefficiencies and other ramp up costs," with "labor

---

[7] In its prior opinion, the Court did not have occasion to consider the adequacy of Ply Gem's disclosures, given the dismissal of the FAC on the basis of immateriality.  *Ply Gem*, 135 F. Supp. 3d at 150 n.2.

ramp-up costs" listed as a potential risk factor that "could result in a decrease in [Ply Gem's] short-term earnings," and mentioned "$0.8 million of expense associated with the consolidation and start-up of [Ply Gem's] production facility in Dallas." (*Id.* at 17 (citations omitted).)

Plaintiff does not dispute Ply Gem's disclosure of the existence of these issues. (Dkt. No. 63 at 16-19.) Rather, "the key information that plaintiffs assert should have been disclosed is whether, and to what extent, the particular known trend, event, or uncertainty might have been reasonably expected to materially affect" Ply Gem's business. *Litwin*, 634 F.3d at 718-19. Here, Ply Gem's disclosures fail to provide clarity on the extent of the expected effect of the low-margin windows and the ramp-up costs—which Plaintiff alleges was a full $8 million. (SAC ¶ 75.) Ply Gem might not have been aware of the precise value of the omissions (Dkt. No. 56 at 18-19), but Plaintiff has adequately alleged that Ply Gem did know that they were "reasonably likely" to have a material impact (SAC ¶ 69). This "potential future *impact* was certainly not public knowledge . . . and thus cannot be considered part of the 'total mix' of information already available to investors." *Litwin*, 634 F.3d at 719.

C. **Section 12(a)(2) Claim**

Defendants also contend that Plaintiff's Section 12(a)(2) claim should be dismissed due to Plaintiff's failure to allege that Defendants are "statutory seller[s]." (Dkt. No. 56 at 21-22.) *See* 15 U.S.C. § 77*l*.

"An individual is a 'statutory seller'—and therefore a potential section 12(a)(2) defendant—if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" *In re Morgan Stanley Info.*

*Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988)).

Plaintiff has alleged that it purchased Ply Gem shares in the IPO (SAC ¶ 19), that each individual defendant was an officer or director of Ply Gem at the time of the IPO (*id.* ¶¶ 21-25), and that each underwriter defendant acted as an underwriter in connection with the IPO (*id.* ¶¶ 26-27). At this stage, that is enough. *See Briarwood Invs. Inc. v. Care Inv. Trust Inc.*, No. 07 CIV. 8159, 2009 WL 536517, at *4 (S.D.N.Y. Mar. 4, 2009) ("Numerous courts in this circuit hold that on a motion to dismiss, officers or directors of the stock issuer who signed its registration statement are deemed to have solicited the purchase of the offered stock."); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 324 (S.D.N.Y. 2013) ("It is enough, at this stage, for Plaintiffs to allege that they purchased securities 'in' or 'pursuant to' the relevant offerings. Should it become apparent after a full factual record is established during discovery that Plaintiffs cannot prove direct purchases from certain individual underwriters, those underwriters will have the opportunity to seek judgment as a matter of law in a motion for summary judgment." (citation omitted)).

**III.      Conclusion**

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Defendants shall file their answer to the surviving claims by October 13, 2016.

The Clerk of Court is directed to close the motions at Docket Numbers 55 and 65.

SO ORDERED.

Dated: September 23, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge