UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ x | | |
| In re PLY GEM HOLDINGS, INC., | : | Civil Action No. 1:14-cv-03577-JPO |
| SECURITIES LITIGATION | : | |
| _____ | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | MEMORANDUM OF LAW IN SUPPORT |
| | : | OF LEAD PLAINTIFF'S MOTION FOR |
| ALL ACTIONS. | : | FINAL APPROVAL OF SETTLEMENT |
| _____ x | : | AND APPROVAL OF THE PLAN OF |
| | | ALLOCATION |

1430520_1

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENTS.........................................................................................................2

     A.   The Law Favors and Encourages Settlements ...........................................2

     B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate,
          and Reasonable ...........................................................................................3

IV.  THE PROPOSED SETTLEMENT IS PROCEDURALLY AND
     SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE....................................5

     A.   The Settlement Is Entitled to a Strong Presumption of Fairness ............................5

     B.   The Settlement Satisfies the *Grinnell* Factors ......................................................6

          1.   Continued Litigation Would Be Complex, Expensive, and
               Protracted ...........................................................................................6

          2.   The Lack of Objections to Date Supports Final Approval of the
               Settlement ...........................................................................................8

          3.   Lead Plaintiff Has Sufficient Information to Make an Informed
               Decision as to the Settlement........................................................................9

          4.   Establishing Liability and Damages Involves Significant Risks ...............10

               a.   Liability........................................................................................11

               b.   Causation and Damages.................................................................12

          5.   Maintaining Class Action Status Through Trial Presents a
               Substantial Risk .......................................................................................13

          6.   Defendants' Ability to Withstand a Greater Judgment.............................14

          7.   The Settlement Amount Is Reasonable in View of the Best
               Possible Recovery and the Risks of Litigation .........................................14

V.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR
     AND ADEQUATE ........................................................................................................16

**Page**

VI.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES
       OF EFFECTUATING THE SETTLEMENT .................................................................17

VII.   NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23
       AND DUE PROCESS ................................................................................................18

VIII.  CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................14

*Cinelli v. MCS Claim Servs.*,
   236 F.R.D. 118 (E.D.N.Y. 2006) ..........................................................................11

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494
   (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot*
   *v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ................................................4, 8, 10

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................4, 9

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) .........................................................................11

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................ *passim*

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................18

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .........................................................................7

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................2, 3, 6, 16

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987)........................................................................14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   MDL No. 1775, 2015 WL 5918273
   (E.D.N.Y. Oct. 9, 2015)........................................................................16

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................13, 16

**Page**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006)..................................................................................11, 16

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000),
*aff'd sub nom. D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)..............................................................9, 10, 11

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................5, 9

*In re Citigroup Inc.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 WL 2230177
(S.D.N.Y. July 27, 2007) ......................................................................3

*In re FLAG Telecom Holdings, Ltd.*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ..........................................................8, 11, 13

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................13

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2007 WL 1191048
(E.D.N.Y. Apr. 19, 2007)....................................................................6

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675
(E.D.N.Y. Sept. 18, 2007)...................................................................7

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417
(S.D.N.Y. Dec. 19, 2014)....................................................................9

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-CV-02509-LHK, 2015 WL 12991307
(N.D. Cal. Mar. 3, 2015).....................................................................5

- iv -

**Page**

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).........................................................................15

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................4, 9, 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)..............................................................20

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................2

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    838 F. Supp. 729 (S.D.N.Y. 1993) .....................................................................5

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................19

*In re OCA, Inc. Sec. & Derivative Litig.*,
    No. 05-2165, 2009 WL 512081
    (E.D. La. Mar. 2, 2009).....................................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998)................................................................................3

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..........................................................5, 8, 14

*In re Sadia S.A. Sec. Litig.*,
    No. 08 Civ 9528 (SAS), 2011 WL 6825235
    (S.D.N.Y. Dec. 28, 2011)......................................................................4, 8, 13, 20

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
    No. 06 Civ 5173 (RPP), 2008 WL 1956267
    (S.D.N.Y. May 1, 2008)........................................................................................7

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................4

Page

*In re Tesco PLC Sec. Litig.*,
   No. 14 Civ. 8495 (RMB), slip op.
   (S.D.N.Y. May 26, 2016)........................................................................................3, 5, 8, 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989).................................................................................3, 15

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809
   (S.D.N.Y. Nov. 7, 2007) ...............................................................................................8, 10, 17

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................16

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund*
*v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742
   (D. Nev. Oct. 19, 2012)............................................................................................................6

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)....................................................................................................4

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................6, 9, 16, 17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..................................................................................................15

*Park v. Thomson Corp.*,
   No. 05 Civ 2931 (WHP), 2008 WL 4684232
   (S.D.N.Y. Oct. 22, 2008) ......................................................................................................13

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982)....................................................................................................9

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................................7

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261
   (S.D.N.Y. May 14, 2004).......................................................................................................10

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................4

- vi -

**Page**

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ...........................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................. *passim*

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k...............................................................................................................7, 12
  §77k(e) .......................................................................................................12, 17
  §77z-1(a)(7) ......................................................................................................19

Federal Rules of Civil Procedure
  Rule 23 ..............................................................................................................18
  Rule 23(a).....................................................................................................17, 18
  Rule 23(b)(3)................................................................................................17, 18
  Rule 23(c)..........................................................................................................14
  Rule 23(c)(2)(B)..........................................................................................18, 20
  Rule 23(e).......................................................................................................1, 18
  Rule 23(e)(1)......................................................................................................18

## SECONDARY AUTHORITY

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities
Class Action Litigation: 2017 Full-Year Review* (NERA 2018) ..................................15

## I.   PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff The Strathclyde Pension Fund ("Lead Plaintiff"), on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion for final approval of the $25,950,000 settlement (the "Settlement Amount") reached in the above-captioned consolidated securities class action (the "Litigation") and approval of the Plan of Allocation.  The terms of the settlement are set forth in the Stipulation and Agreement of Settlement, dated as of February 9, 2018, which was previously filed with the Court ("Stipulation" or "Settlement").  ECF No. 112.[1]  This recovery is the product of Lead Counsel's vigorous efforts in prosecuting the Litigation, followed by arm's-length settlement negotiations among experienced and knowledgeable counsel, including a formal mediation session (as well as numerous telephonic sessions), conducted over several weeks and overseen by a nationally-recognized, neutral mediator.

The Settlement represents a very good result for the Class in light of the risks Lead Plaintiff faced, and would have faced, had the Litigation continued, including: (1) the risk that the Court would deny Lead Plaintiff's motion to certify the Class; (2) the risk that Defendants would prevail on their motion for summary judgment at the conclusion of discovery; and (3) the possibility that protracted, expensive, and contested litigation, including trial and likely appeals, could ultimately lead to no recovery, or a far smaller recovery.

Further confirming the fairness of the Settlement is the fact that, to date, Members of the Class have reacted positively to the Settlement.  Pursuant to the Order Preliminarily Approving

---

[1]     All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and the Declaration of Robert M. Rothman in Support of:  (1) Lead Plaintiff's Motion for Final Approval of Settlement and Approval of the Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Rothman Decl."), submitted herewith.

Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 114), copies of the Notice were sent to over 13,400 potential Class Members and nominees beginning on March 30, 2018, and notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on April 13, 2018.[2]  *See* Fraga Decl., ¶¶2-12.  To date, not a single objection to the Settlement has been filed, and no requests for exclusion from the Class have been received.  *Id.*, ¶15.

Finally, Lead Counsel, who has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Rothman Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Litigation, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.

## III.     STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.      The Law Favors and Encourages Settlements

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily

---

[2]      *See* Declaration of Jose Fraga Regarding Notice Dissemination, Publication and Requests for Exclusion Received to Date ("Fraga Decl."), submitted herewith.

lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("the courts have long recognized that [complex class action] litigation 'is notably difficult and notoriously uncertain,' . . . and that compromise is particularly appropriate") (citation omitted).  Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery,'" *Wal-Mart*, 396 F.3d at 116 (citation omitted), and "overseen by an experienced, neutral third-party mediator." *In re Citigroup Inc.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013); *see also In re Tesco PLC Sec. Litig.*, No. 14 Civ. 8495 (RMB), slip op. at 7-8 (S.D.N.Y. May 26, 2016) (attached hereto as Exhibit A).  "Due to the presumption in favor of settlement, '[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Advanced Battery*, 298 F.R.D. at 174 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).  Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

## B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Courts may approve a settlement that is binding on the class if it determines that the settlement is "'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart*, 396 F.3d

at 116 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  This evaluation requires courts to consider both "the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *Wal-Mart*, 396 F.3d at 116.

With respect to the negotiation process, a class action settlement enjoys a "presumption of fairness" where it is the product of arm's-length negotiations between experienced and capable counsel.  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011).

With respect to the substantive terms of a settlement, courts in the Second Circuit consider the following factors (known as the "*Grinnell* factors") when determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).  As such, the court should assess the settlement as presented, without modifying its terms, and without substituting its "'business judgment for that of counsel, absent evidence of fraud or overreaching.'" *In re Global Crossing Sec.*

- 4 -

1430520_1

*& ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (quoting *In re McDonnell Douglas Equip.*

*Leasing Sec. Litig.*, 838 F. Supp. 729, 737 (S.D.N.Y. 1993)).

Lead Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and

adequate when measured under the relevant criteria and the circumstances of this Litigation, and

should be approved by the Court.

## IV.   THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE

### A.   The Settlement Is Entitled to a Strong Presumption of Fairness

As previously noted, a strong presumption of fairness attaches to a class action settlement

reached through arm's-length negotiations among able and experienced counsel.  *See Wal-Mart*, 396

F.3d at 116; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long

as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption

of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the presumption of fairness and adequacy is appropriate because the Settlement was

reached by experienced, fully-informed counsel after arm's-length negotiations, without collusion, and

following mediation before a nationally-recognized mediator.  *See Global Crossing*, 225 F.R.D. at

461; *see also* Rothman Decl., ¶¶45-51.  Indeed, the participation of the Honorable Layn R. Phillips

(Ret.), a former federal district judge and a highly-qualified mediator, particularly in securities class

actions, strongly supports a finding that negotiations were conducted at arm's length and without

collusion.  *See Tesco*, slip op. at 9; *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK,

2015 WL 12991307, at *1 (N.D. Cal. Mar. 3, 2015) (finding Judge Phillips to be "an experienced

mediator"); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement

where parties "engaged in extensive arm's length negotiations, which included multiple sessions

mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of

- 5 -

complex securities cases"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (settlement was fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips").

The negotiation process that Judge Phillips oversaw also supports the presumption of fairness.  In that regard, the process included the preparation and exchange of detailed mediation statements, candid and frank discussions about the strengths and weaknesses of the case, and the completion of document discovery, including the review and analysis of approximately 250,000 pages of documents.  Rothman Decl., ¶91.  Thus, Lead Counsel was fully informed of the strengths and weaknesses of the case by the time the Settlement was reached.  *See id.*, ¶¶5-7; *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation'") (citation omitted).

These and other considerations discussed in the Rothman Declaration confirm the reasonableness of the Settlement.  Accordingly, the Settlement should be entitled to the presumption of procedural fairness under Second Circuit law.

   **B.**     **The Settlement Satisfies the *Grinnell* Factors**

        **1.**     **Continued Litigation Would Be Complex, Expensive, and Protracted**

Without the Settlement, the anticipated complexity, cost, and duration of the Litigation would be considerable.  *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007).  This Litigation involves many complex legal issues relating to the federal securities

- 6 -

1430520_1

laws.  For instance, Lead Plaintiff's allegations raised issues involving liability, including whether the allegedly omitted information was actually disclosed and whether any alleged misstatement or omission was material.  Rothman Decl., ¶¶28-31.  In addition, Defendants raised issues of negative causation under §11 and the amount of recoverable damages.  Accordingly, discovery was extensive. At the time the Settlement was reached, Lead Counsel had received and reviewed over 250,000 pages of documents produced by Defendants and had retained a number of experts.  *Id.*, ¶¶6, 38-40.

Had the Settlement not been reached, Lead Plaintiff would be required to complete depositions, retain additional experts, prepare expert reports, and complete expert discovery.  *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) (finding the costs of litigating against defendant to be "significant" due to increased costs and complexity of discovery).  A motion for summary judgment, as well as motions *in limine* also would have to be briefed by the parties.  All of the foregoing would add years of additional delay before Class Members could enjoy the benefit of a verdict, if any, obtained by Lead Plaintiff.  *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Even if the Class could recover a larger judgment after a trial, the additional delay posed by the trial itself, as well as post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing any such recovery's value.  *See Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would

- 7 -

necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement avoids these risks.  Instead of the lengthy, costly, and uncertain course of further litigation, the Settlement provides for an immediate cash recovery for the Class.  As a result, the Settlement outweighs the risks associated with lengthy and costly continued litigation.

## 2. The Lack of Objections to Date Supports Final Approval of the Settlement

The reaction of the Class to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (citation omitted); *see also In re FLAG Telecom Holdings, Ltd.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *16 (S.D.N.Y. Nov. 8, 2010).  In fact, the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'" *City of Providence*, 2014 WL 1883494, at *5 (citing *PaineWebber*, 171 F.R.D. at 126). *See also Tesco*, slip op. at 10 ("[T]he 'reaction of the class to the settlement' – favors approval of the Settlement insofar as no Class Member objected to the Settlement.").

To date, the reaction of the Class is unanimously positive and supports approval of the Settlement. *See Sadia*, 2011 WL 6825235, at *1.  Pursuant to the Preliminary Approval Order, over 13,400 copies of the Notice were mailed to potential Class Members and nominees; and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on April 13, 2018.  Fraga Decl., ¶¶11-12.  Class Members have until June 8, 2018 to object to the Settlement or request exclusion from the Class.  While that date has not yet passed, to date, there have been no objections to the Settlement, and no requests for exclusion have been received. *Id.*, ¶15.  Lead Plaintiff will file papers on or before June 22, 2018, to address any objections and further update the Court on requests for exclusion that may be received following this submission.

### 3.    Lead Plaintiff Has Sufficient Information to Make an Informed Decision as to the Settlement

In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *Bear Stearns*, 909 F. Supp. 2d at 267 (quoting *IMAX*, 283 F.R.D. at 190). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that discovery cannot commence in cases brought under the PSLRA until the motion to dismiss is denied); *Maley*, 186 F. Supp. 2d at 363; *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement.") (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims.").

In this case, there is no question that Lead Plaintiff had sufficient information to make an informed decision on the propriety of the Settlement. As detailed in the Rothman Declaration, Lead Plaintiff and its counsel were able to negotiate a settlement for the Class after conducting an extensive factual investigation and analysis relating to the events and transactions beginning with the initial complaint, including the review of Ply Gem's SEC filings, news reports, and other publicly available information regarding Ply Gem. Rothman Decl., ¶53. In addition, Lead Counsel's investigators conducted 23 witness interviews. *Id.* Lead Counsel also consulted with a forensic

accountant and retained an expert on issues of materiality, causation, and damages. *Id.* Lead Counsel's thorough investigation continued with the drafting of detailed amended complaints; opposing Defendants' two motions to dismiss; fully briefing Lead Plaintiff's motion for class certification; engaging in extensive fact and class certification discovery, including the review and analysis of over 250,000 pages of documents; and participating in an in-person mediation with Defendants' counsel overseen by Judge Phillips, with numerous follow-up communications. *See* Rothman Decl., ¶¶54-57.

As noted above, Lead Counsel prepared a detailed mediation statement that was provided to Judge Phillips and Defendants' counsel prior to the March 28, 2017 mediation session, and held discussions with Defendants' counsel during the mediation where Defendants' counsel not only pressed the arguments raised in their motions to dismiss but also identified arguments Defendants likely would make if the case were to progress. The mediation session was unsuccessful and litigation continued while Judge Phillips continued discussions with the parties until an agreement-in-principle was reached.

Accordingly, Lead Plaintiff and its counsel "have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *City of Providence*, 2014 WL 1883494, at *7 (citing *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

### 4.     Establishing Liability and Damages Involves Significant Risks

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 WL 4115809, at *8; *Austrian & German Bank*, 80 F. Supp.

2d at 177.  However, the Court need not "'decide the merits of the case or resolve unsettled legal

questions'" (*Cinelli v. MCS Claim Servs.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (citation omitted)),

or "foresee with absolute certainty the outcome of the case." *Austrian & German Bank*, 80 F. Supp.

2d at 177.  Rather, the Court need only weigh the risks of litigation against the certainty of recovery

offered by the Settlement.  *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y.

2005).

      The risks presented by securities litigation generally weigh in favor of final settlement

approval.  *See Tesco*, slip op. at 11 ("Additionally, Plaintiffs faced the risks of bringing any

securities claims, such as establishing scienter and damages.").  Courts in this district "'have long

recognized that [securities] litigation is notably difficult and notoriously uncertain.'"  *FLAG

Telecom*, 2010 WL 4537550, at *15 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281

(S.D.N.Y. 1999)); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500,

2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a

common risk of securities litigation.").

      While Lead Counsel believes, based on its investigation and the discovery obtained to date,

that the claims asserted against Defendants have merit, it also recognizes that Lead Plaintiff would

(and did) face hurdles and uncertainties in prosecuting this very complex action and recovering a

judgment from Defendants.  Rothman Decl., ¶¶58-82.

### a.      Liability

      Throughout the Litigation, including in its two motions to dismiss and throughout the

mediation, Defendants maintained that Lead Plaintiff could not establish that Defendants violated

their disclosure obligations.  For instance, Defendants argued that the allegedly omitted information

was either disclosed in the offering documents or not required to be disclosed.  Rothman Decl., ¶62

- 11 -

(operational inefficiencies and ramp-up costs disclosed in the Registration Statement).  Defendants also argued that none of the alleged misstatements or omissions were material.  For instance, Defendants argued that Lead Plaintiff relied on operating metrics, *e.g.*, gross profit and operating earnings, rather than net sales and revenue which Defendants argued was more meaningful.  Rothman Decl., ¶66.  While Lead Counsel believed that these hurdles could be overcome, and that liability could be established, nevertheless the risks remained that a jury would agree with Defendants' arguments, precluding any recovery.

### b.      Causation and Damages

Even assuming that Lead Plaintiff was successful at establishing liability, *i.e.*, misstatements or omissions in the offering documents, Lead Plaintiff would still need to establish recoverable damages under §11 of the Securities Act.  To do this, Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages using the statutory measure under §11, *see* Rothman Decl., ¶79, and believed those damages could be proven at trial and sustained on appeal.  However, damages under §11 may be reduced or eliminated if the defendant establishes a defense of negative causation – that a portion or all of the statutory damages are attributable to causes other than the misstatements or omissions.  *See* 15 U.S.C. §77k(e).

In fact, Defendants advised Lead Plaintiff that they had retained experts who would opine that by August 13, 2013, Ply Gem's stock price fully reflected the omitted information.  Rothman Decl., ¶73.  According to Defendants, investors who purchased after August 12, 2013, suffered no cognizable damages.  *Id.*  And with respect to purchases before August 12, 2013, Defendants argued that the stock's decline was for reasons other than the alleged misstatements or omissions, *e.g.*, that the decline in Ply Gem shares was due to an industry-wide decline in prices.  *Id.*, ¶74.  If a jury were to accept all of Defendants' negative causation arguments, Lead Plaintiff's damages would have

- 12 -

been limited to $62 million, in which case the Settlement represents a recovery of 42% of recoverable damages.  Rothman Decl., ¶75.

While Lead Plaintiff would have been able to present a cogent and persuasive expert's view addressing each of Defendants' arguments, these risks were significant and further support the Settlement.  Indeed, as Defendants would have also produced well-qualified experts to opine on causation, the issues of both causation and damages would have been resolved through a "battle of the experts."  *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001) ("'In [a] "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'") (citation omitted).  Lead Plaintiff could not be certain which expert's view would prevail at trial. *See, e.g.*, *FLAG Telecom*, 2010 WL 4537550, at *18; *see also Sadia*, 2011 WL 6825235, at *2 ("Damages must be proved by expert testimony, which a jury may choose to reject.").  Accordingly, courts have recognized that when parties will likely rely on significant expert testimony and analysis, settlement is favored.  *See In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'"); *Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008).

### 5.      Maintaining Class Action Status Through Trial Presents a Substantial Risk

Lead Plaintiff's motion for class certification was fully briefed and pending at the time the Settlement was reached.  While Lead Plaintiff believed it would prevail on the motion, Defendants certainly disagreed, giving rise to the risk that the Class would not be certified.  Even if the Court granted the motion, Defendants may have moved to decertify the Class or to shorten the Class Period

- 13 -

before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). In fact, the length of the Class Period was, and would continue to be, vigorously litigated by the parties in the context of Defendants' negative causation defense, as discussed above. Rothman Decl., ¶¶70-72. The presence of this risk and the uncertainty surrounding it, therefore, weighs in favor of final approval of the Settlement.

### 6.    Defendants' Ability to Withstand a Greater Judgment

Courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement. "[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is not required to "empty its coffers" before a settlement can be found adequate.'") (citations omitted). Nevertheless, a potential source of recovery from Defendants (their liability insurance policy) was diminishing through the course of the Litigation.

### 7.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119. A court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted). The "range of reasonableness" has been described by the Second Circuit as a range that "recognizes the uncertainties of law and fact in any

- 14 -

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $25,950,000 Settlement is a substantial result for the Class, especially in light of the stage of litigation, the risks associated with continued litigation of this complex securities class action, and the total amount of recoverable damages.  As explained in Lead Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Settlement (at 13-15) (ECF No. 111), the Settlement represents approximately 17%-42% of estimated recoverable damages.  This range reflects the possibility that a jury might accept Defendants' negative causation defense, discussed above, limiting recoverable damages to $62 million, versus the jury completely rejecting this defense, allowing for recoverable damages as high as $155 million.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement amounting to 5.2% of damages for common stock holders); *see also Union Carbide*, 718 F. Supp. at 1103 ("The Court of Appeals has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought. . . .  The essence of settlement is compromise."); *Global Crossing*, 225 F.R.D. at 461 ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'") (quoting *Grinnell*, 495 F.2d at 455).

As further explained in connection with preliminary approval, a settlement in the range of 17%-42% of estimated recoverable damages is well above the median percentage for securities class action settlements in 2017 and a very good result for the Class.  The median settlement value in 2017 as a percentage of investor losses for cases with investor losses of $155 million was 3.2%, and the median percentage for all securities class action settlements in 2017 was 2.6%.  Stefan Boettrich &

Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 37 (Figure 28) & 38 (Figure 29) (NERA 2018).

Finally, the Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues present here, the fairness of the Settlement is apparent. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Lead Plaintiff respectfully submits that the immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the risks of litigation.

## V.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation (the "Plan") is the same as the standard for approving the Settlement as a whole. Specifically, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (citation omitted). "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180 (quoting *Global Crossing*, 225 F.R.D. at 462; *Am. Bank Note*, 127 F. Supp. 2d at 429-30).

- 16 -

The Plan, which is set forth in the Notice, is based on the statutory formula for computing damages under §11(e) of the Securities Act.  In addition, it was prepared with the assistance of Lead Counsel's damages expert.  It is a fair method to divide the Net Settlement Fund for distribution based on the claims alleged.  *See* Rothman Decl., ¶¶83-87.

The Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, Members of the Class who submit timely and valid Proofs of Claim and Release that are approved for payment from the Net Settlement Fund pursuant to the Plan.  The Plan treats all Class Members in a similar manner: everyone who submits a valid and timely Proof of Claim and Release form, and does not exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants so long as such Authorized Claimant's payment amount is $10.00 or more.

Lead Counsel believes that the Plan is fair and reasonable and respectfully submits that it should be approved by the Court.  Notably, there have been no objections to the Plan to date, which also supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7; *Maley*, 186 F. Supp. 2d at 367.

## VI.     THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In presenting the Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court certify the Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing and the rights of Class Members to object to the Settlement, request exclusion from the Class or submit Proof of Claim and Release forms, could be issued.  In the Preliminary Approval Order, the Court addressed the requirements for class certification set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and found that Lead Plaintiff had met the

- 17 -

requirements for certification of the Class for purposes of settlement.  By its Preliminary Approval

Order, the Court preliminarily certified the following Class:

> [a]ll Persons and entities who purchased or otherwise acquired Ply Gem common
> shares in or traceable to the Company's initial public offering of common stock on or
> about May 23, 2013 from May 23, 2013 to December 15, 2014, inclusive.  Excluded
> from the Class are: Defendants, the officers and directors of Ply Gem at all relevant
> times, members of their immediate families, any entity in which any Defendant has a
> controlling interest, and the legal representatives, heirs, successors-in-interest or
> assigns of any such excluded party; provided that Investment Vehicles shall in no
> event be excluded.  Also excluded from the Class are those Persons who timely and
> validly request exclusion from the Class pursuant to the requirements described [in
> the Notice sent] to Class Members.

*See* ECF No. 114, ¶¶2-3.  In addition, the Court preliminarily certified Lead Plaintiff as class

representative and Robbins Geller as class counsel.  *Id.*, ¶5.

Since entry of the Preliminary Approval Order, nothing has changed to alter the propriety of

the Court's preliminary certification of the Class and, for all the reasons stated in Lead Plaintiff's

motion for preliminary approval, incorporated herein by reference, Lead Plaintiff respectfully

requests that the Court affirm its preliminary certification and finally certify the Class for purposes

of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appoint Lead

Plaintiff as class representative and Lead Counsel as class counsel.

## VII.   NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF
##        RULE 23 AND DUE PROCESS

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the

best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 173 (1974).  Additionally, notice of a settlement must be directed to class

members in a "reasonable manner."  Fed. R. Civ. P. 23(e)(1).  Notice of a settlement satisfies Rule

23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed

- 18 -

settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (citations omitted); *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). "Notice need not be perfect" or received by every class member, but instead be reasonable under the circumstances. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Id.* (citing *Wal-Mart*, 396 F.3d at 114).

The Notice and the method utilized to disseminate the Notice to potential Class Members satisfies these standards. The Court-approved Notice and Proof of Claim and Release (the "Notice Packet") amply apprise Class Members of, *inter alia*: (1) the pendency of the Litigation; (2) the nature of the Litigation and the Class' claims; (3) the essential terms of the Settlement; (4) the proposed Plan; (5) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (6) the binding effect of a judgment on Class Members; and (7) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses. *See* Fraga Decl., Ex. A. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (1) submitting a Proof of Claim and Release; (2) requesting exclusion from the Class; and (3) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains the information required by the PSLRA, 15 U.S.C. §77z-1(a)(7), including: (1) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (2) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); (3) a statement indicating the attorneys' fees

and costs sought; (4) identification and contact information of counsel; and (5) a brief statement explaining the reasons why the parties are proposing the Settlement.  *See* Fraga Decl., Ex. A; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003).

In accordance with the Preliminary Approval Order, Garden City Group, LLC ("GCG") commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and nominees on March 30, 2018.  Fraga Decl., ¶¶3-4.  As of May 23, 2018, over 13,400 copies of the Notice Packet have been mailed.  *Id.*, ¶11.  GCG also published the Summary Notice in *The Wall Street Journal* and transmitted it over the *PR Newswire* on April 13, 2018.  *Id.*, ¶12. Additionally, GCG posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement.  *Id.*, ¶14.[3]

This combination of individual First-Class Mail to all Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances."   Fed. R. Civ. P. 23(c)(2)(B).  This method of providing notice has been repeatedly approved for use in securities class actions and other comparable class actions.  *See, e.g.*, *Sadia*, 2011 WL 6825235, at *1; *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *7-*9 (E.D. La. Mar. 2, 2009) (mailing, internet publication, and newspaper publication satisfied due process notice requirements).

## VIII.   CONCLUSION

The Settlement obtained here is very favorable to the Class.  Therefore, for the foregoing reasons, Lead Plaintiff respectfully requests that this Court enter the proposed Final Judgment and

---

[3]      The Notice and Summary Notice reference the Internet website for the Settlement.  *See* Fraga Decl., Exs. A and B.

Order of Dismissal with Prejudice, approving the Settlement and the notice program.  Lead Plaintiff

also requests that the Court enter an order approving the Plan, which will govern distribution of the

Settlement proceeds.

DATED:  May 25, 2018                           Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              SAMUEL H. RUDMAN
                                              ROBERT M. ROTHMAN
                                              ERIN W. BOARDMAN
                                              CHRISTOPHER T. GILROY


                                                    *s/ Robert M. Rothman*
                                              ROBERT M. ROTHMAN

                                              58 South Service Road, Suite 200
                                              Melville, NY  11747
                                              Telephone:  631/367-7100
                                              631/367-1173 (fax)
                                              srudman@rgrdlaw.com
                                              rrothman@rgrdlaw.com
                                              eboardman@rgrdlaw.com
                                              cgilroy@rgrdlaw.com

                                              Lead Counsel for Plaintiffs

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I, Robert M. Rothman, hereby certify that on May 25, 2018, I caused a true and correct copy

of the attached:

Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of
Settlement and Approval of the Plan of Allocation

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filings to all counsel registered to receive such notice.



*s/ Robert M. Rothman*

ROBERT M. ROTHMAN